Nausher SIAL, Appellant–Petitioner,

v.

**STATE of Indiana, Appellee– Respondent.**

No. 71A04–0609–PC–502.

Court of Appeals of Indiana.

March 28, 2007.

Donald E. Wertheimer, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-petitioner Nausher Sial appeals from the denial of his petition for post-conviction relief. Specifically, Sial makes two arguments, one of which is dispositive: he alleges that the post-conviction court erred in finding that he did not receive the ineffective assistance of trial counsel based on his attorney's failure to advise him that deportation was a possible consequence of a guilty plea. Finding that Sial's attorney was ineffective for failing to advise his client of the penal consequences of pleading guilty, we reverse the judgment of the post-conviction court and remand this proceeding for trial.

### FACTS

Sial was born in Pakistan and entered the United States in 1986 with a visitor's visa. In 1996, Sial obtained green card status and became a permanent resident of the United States. Sial is a business broker who assists people in the purchase and sale of property. Anif Zaheer gave $80,000 to Sial to hold in the event that such a transaction went through. The transaction failed to go through, but Sial had already spent Zaheer's money and was unable to repay the funds.

On December 9, 2004, the State charged Sial with one count of theft. The trial court conducted a guilty plea hearing on June 7, 2005, at which time Sial pleaded guilty as charged. At the hearing, the trial court informed Sial that theft may be treated either as a misdemeanor or as a felony. Neither Sial's attorney nor the trial court inquired regarding Sial's immigration status; similarly, neither his attorney nor the trial court advised Sial that deportation is a possible consequence of a felony conviction. On January 13, 2006, the trial court held a sentencing hearing, entered a judgment of conviction on class D felony theft, and imposed a sentence of eighteen months on Sial.

On March 29, 2006, the Department of Justice sent a notice to Sial informing him that he was deportable for his felony theft conviction and ordering him to appear at a hearing before an immigration judge in Chicago to show cause why he should not be deported. On April 28, 2006, Sial filed a petition for post-conviction relief, alleging, among other things, that there was no factual basis for his guilty plea and that he had received the ineffective assistance of trial counsel because of his attorney's failure to advise him that deportation is a possible consequence of pleading guilty. On June 14, 2006, following a hearing, the post-conviction court denied Sial's petition. Sial now appeals.

### DISCUSSION AND DECISION

 The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *McCarty v. State*, 802 N.E.2d 959, 962 (Ind.Ct.App.2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Post-conviction procedures do not afford petitioners with a "super appeal." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind.Ct.App.2003). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based upon grounds enumerated in the post-conviction rules. *Id.; see also* P–C.R. 1(1).

 Sial argues that the post-conviction court erred in finding that he did not receive the ineffective assistance of counsel. When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App.2003). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In *Segura v. State*, our Supreme Court considered the burden of proof carried by a post-conviction petitioner seeking to establish ineffective assistance of counsel

based on a failure to advise the client of deportation as a possible penal consequence. 749 N.E.2d 496 (Ind.2001). The court concluded that such a failure to advise may, under certain circumstances, constitute ineffective assistance:

> [T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance. Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.

*Id.* at 500. The court then moved on to consider how a petitioner should establish prejudice resulting from his attorney's failure to advise him of the possible penal consequences of a guilty plea, noting that it is " 'far from obvious' " how that showing should be made. *Id.* (quoting *United States v. Ryan*, 986 F.Supp. 509, 513 (N.D.Ill.1997), *cert. denied*).

The State herein insists that to succeed, Sial must establish that he would have been acquitted had he not pleaded guilty, but this is a misreading of *Segura,* in which our Supreme Court opined as follows:

> The cases where a showing of prejudice from incorrect advice as to the inevitable consequences of conviction will be able to be made may be few. If such a circumstance is shown, however, the defendant should not be stripped of the presumption of innocence, the requirement of proof beyond a reasonable doubt, and the other procedural rights

that are not available in postconviction proceedings. To require a showing of innocence to obtain a new trial would have that effect.

*Id.* at 507. Ultimately, the *Segura* court held that

> [i]n order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered. Nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. To state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, the petitioner must allege ... " 'special circumstances,' " or ... " 'objective facts' " supporting the conclusion that the decision to plead was driven by the erroneous advice.
>
> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised.... Nevertheless, ... a petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "

*Id.* (footnotes omitted) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *McCleese v. United States,* 75 F.3d 1174, 1179 (7th Cir.1996), *cert. denied*).

Here, Sial testified at the post-conviction hearing that he would not have pleaded guilty had he known that deportation was a possible consequence of a felony conviction. According to *Segura,* however, Sial's

conclusory testimony to that effect is insufficient for him to succeed on his petition. He must also show special circumstances or specific facts to merit post-conviction relief.

There is a dearth of caselaw interpreting *Segura's* requirement that a petitioner must show special circumstances or specific facts to succeed on a claim of ineffective assistance of counsel stemming from counsel's failure to advise the client of deportation as a possible penal consequence of pleading guilty. Here, Sial testified that he has a wife and a thirteen-year-old daughter. PCR Tr. p. 28. Inasmuch as Sial has been in the United States for over twenty years, we infer that his daughter was likely born here and, consequently, would be an American citizen. If deported, Sial would be forced either to leave his wife and child behind or to uproot them from this country—most likely the only home his daughter has ever known. We believe that these are sufficient special circumstances and specific facts to establish a reasonable probability that if Sial's attorney had advised him that deportation is a possible consequence of a felony conviction, Sial would have chosen to proceed to trial rather than to plead guilty.

The post-conviction court, however, noticed a statement made by Sial in the presentence investigation report (PSI). Although the PSI is not a part of the record on appeal, portions of the transcript of the post-conviction hearing concern the relevant part of the PSI. First, Sial's attorney questioned him about the PSI:

Q. Now you entered your plea of guilty on June 7, 2005?

A. Yes.

Q. All right. You were interviewed on July 13, 2005. And whoever interviewed you indicated in the note that you didn't want it to be treated as a felony. Would you tell the Court, what was the conversation between you and the probation officer about this issue?

A. She asked me why that long you are [sic] in the United States, why not you [sic] apply for citizenship. And I explained that Pakistan has no law for citizenship, for that reason I did not apply. But in December of 2005, was the last anybody could have citizenship with Pakistan or any other country.

Q. But did you indicate to the probation officer that if this is treated as a felony it would keep you from applying for citizenship and could get you deported, did you mention that to the probation officer?

A. I don't know what I said.

Q. Okay. Well, when you entered the plea of guilty on June 7, 2005[,] were you aware that you could be deported, if it was treated as a felony?

A. I was not, the homeland security came and told me [sometime during or before March 29, 2006].

Q. Until homeland security came?

A. Came and then I knew.

Q. Well, but you also knew when you got that March 29, 2006—

A. They sent the letter after my interview.

Q. Oh, so it was delayed in getting to you.

A. Plus then to send the letter [sic].

Q. So would you agree then that this report is inconsistent with what you understood about deportation?

A. Yes.

PCR Tr. p. 44–45. Subsequently, the post-conviction court discussed the disputed portion of the PSI:

I do note, although Mr. Sial contests it, the Court does place weight on the comments of its own probation department. Specifically, the probation officer who

prepared the pre-sentence report in this matter, and on page five on a note under Roman numeral III, sub-section (C):

> "The defendant stated he does not want this case to be treated as a felony, as it would keep him from applying for citizenship and could get him deported."

> "This officer explained to the defendant that he has agreed to plead guilty to a felony in this case. This officer also told the defendant he would have to speak with his attorney, if he had any additional questions in the matter."

> In the plea dialogue I did advise the defendant of the fact that he was pleading guilty to a Class D Felony, and I further advised the defendant of the possibility that it could be treated as a misdemeanor.

> It seems to me that based upon that, that the defendant did have knowledge of the consequences of the conviction. That he could, number one, not gain citizenship, or number two, he could be deported. Defendant may or may not have known of the increased scrutiny by Home Land [sic] Security, post 911.

*Id.* at 58–59.

Even if we accept the trial court's opinion that the probation officer did not misrepresent Sial's understanding of the penal consequences of a felony conviction, whatever Sial may or may not have known over one month after the guilty plea hearing is irrelevant to his understanding at the time he pleaded guilty. Nothing in the record remotely tends to establish that, at the time Sial pleaded guilty, he understood that a felony conviction could lead to deportation. Consequently, the statement in the PSI does not undercut the prejudice Sial suffered as a result of his attorney's failure to advise him of the penal consequences of a felony conviction.

Finally, we observe that Sial's trial attorney showed admirable candor at the post-conviction hearing, admitting that he fundamentally failed to assist his client effectively:

> The only other point I want to make as an officer of the Court, is that the short time I was Mr. Sial's attorney, I should have inquired and made that point to Mr. Sial about immigration, I did not. Neither did [Sial's other trial attorney].

> And I think that any attorney who represents defendant's [sic] in a criminal case who are not native born, we should all inquire about that and make those determinations and advise our clients accordingly, so that they can truly make an informed decision as to whether to enter a plea of guilty to a particular charge that might have all those ramifications.

PCR Tr. p. 35–36. Although counsel's statements do not establish ineffective assistance, his acknowledgement that he dropped the proverbial ball lends substantial support to Sial's argument on appeal. Not only do we respect this attorney for his frankness, we also wholeheartedly agree with his admonishment that all attorneys representing non-native born clients should be sure to get all the facts and advise the client accordingly.

In conclusion, to succeed as a post-conviction petitioner under these circumstances, Sial is required to establish special circumstances or specific facts showing that if his attorney had properly advised him of the penal consequences of a guilty plea—here, deportation—there is a reasonable probability that he would have chosen to proceed to trial. We conclude that the presence of a wife and daughter in Sial's life and the fact that he has lived in this country for over twenty years are sufficient special circumstances to make

the requisite showing. Consequently, we find that Sial received the ineffective assistance of counsel and that the post-conviction court erred in denying Sial's petition.

The judgment of the post-conviction court is reversed and this proceeding is remanded for trial.

DARDEN, J., and ROBB, J., concur.