**Manuel TRUJILLO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–1102–PC–73.

Court of Appeals of Indiana.

Nov. 28, 2011.

Rodolfo S. Monterrosa, Jr., South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

This is a consolidated appeal of the denial of Manuel Trujillo's petitions for post-conviction relief (PCR), by which he challenged two separate convictions under two separate cause numbers for Conspiracy to Deal Marijuana,[1] the first one as a class D felony and the second as a class C felony. Trujillo pleaded guilty to the class D felony offense in 1999 and to the class C felony offense in 2008. Trujillo challenges each conviction on the same grounds. We restate those issues as follows:

1. Did trial counsel render ineffective assistance in failing to advise Trujillo with respect to the possibility of deportation in the event he pleaded guilty?

2. Must Trujillo's guilty plea be set aside because it was not entered knowingly and intelligently?

We affirm.

The facts are that Trujillo immigrated to the United States from Mexico in 1974, when he was approximately sixteen years old. He has lived in the United States ever since. In 1999, while living in South Bend, Indiana, he pleaded guilty to conspiracy to deal marijuana, a class D felony. Trujillo agreed with the State's representation that the case against him was "very strong". *PCR Transcript*[2] at 35. At the time of the guilty plea, his attorney failed to advise him of the adverse immigration consequences of pleading guilty.

In 2008, still living in South Bend, Trujillo pleaded guilty to a second charge of conspiracy to deal marijuana, this time as a class C felony. He was represented by different counsel in the 2008 case. His 2008 counsel, Michael Tuszynski, was aware of possible negative consequences to non-citizens as a result of a felony conviction, but was unaware that Trujillo was not a citizen. Therefore, he did not discuss the immigration consequences of a guilty plea with Trujillo. The presentence investigation report (the PSI) prepared for the 2008 case indicated that Trujillo was a U.S. citizen. Trujillo reviewed the PSI prior to sentencing and indicated to his attorney and to the court that it was correct.

Trujillo eventually was deported to Mexico after the 2008 conviction. On June 2, 2010, he filed PCR petitions in both causes on grounds that the failure to inform him of the adverse immigration consequences in each case rendered his guilty pleas invalid. Following a consolidated hearing, the court denied both PCR petitions. In its order, the trial court made the following findings with respect to the 1999 conviction:

> The Petitioner further testified that his 1999 conviction caused him to lose his permanent legal status, though he

---

1. Ind.Code Ann. § 35–41–5–2 (West, Westlaw through end of 2011 1st Regular Sess.) (conspiracy); Ind.Code Ann. § 35–48–4–10 (West, Westlaw through end of 2011 1st Regular Sess.) (dealing in marijuana).

2. The transcript of the hearing on Trujillo's PCR petition is in a binding entitled "Index." This title is descriptively inaccurate. Therefore, we refer to it as indicated.

only became aware of the fact following his 2008 conviction . . ., when he became subject to Removal Proceedings in Illinois in 2009. Petitioner testified that his attorney in 1999 never asked if he was a citizen, nor discuss [sic] with him his immigration status.

Finally, as it related to his 1999 conviction, Petitioner, in response to both his attorney and the State, testified at the hearing on his Petition, that had he been told in 1999 that he could have been deported as a result of this conviction that he still would have pled guilty.

*Appellant's Appendix* at 54. The court entered the following findings of fact with respect to the 2008 conviction:

> [Attorney] Tuszynski testified at the hearing that he was aware in 2008 there could be negative consequences to non-citizens due to a felony conviction. He testified that he was not aware that Petitioner was a legal, non-citizen resident; and did not discuss non-citizenship status nor the implications of the conviction to a non-citizen with Petitioner. Counsel testified that he had no reason to believe Petitioner was not a U.S. citizen.

*Id.* The court also noted that Trujillo acknowledged at the hearing that the PSI indicated he was a U.S. citizen and that he had indicated it was correct. Trujillo claimed, however, that he simply did not review the PSI closely enough to discover the error. Finally, Trujillo claimed he "gave no thought that there could be immigration consequences as there had been none following the 1999 conviction." *Id.* at

55. Trujillo appeals the post-conviction court's denial of his petitions.

1.

■■■ Trujillo contends that trial counsel rendered ineffective assistance in failing to advise him of the possibility of deportation in the event he pleaded guilty.[3] We begin by noting that in a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Ritchie v. State*, 875 N.E.2d 706 (Ind.2007). A petitioner who has been denied post-conviction relief is in the position of appealing from a negative judgment. *Id.* The standard of review for a petitioner denied post-conviction relief is rigorous. For this court to reverse, the petitioner must prove that the evidence unerringly and unmistakably leads to the opposite conclusion. *Id.*

■■■ A petitioner who claims that his plea was involuntary and unintelligent but can only establish that the trial court failed to give an advisement in accordance with Ind.Code Ann. § 35–35–1–2 (West, Westlaw through end of 2011 1st Regular Sess.) has not met the burden of proof. *White v. State*, 497 N.E.2d 893 (Ind.1986). The petitioner must plead specific facts from which a fact-finder could conclude that the trial court's failure to make a full inquiry in accordance with I.C. § 35–35–1–2(a) rendered the petitioner's decision involuntary or unintelligent. *Id.* The petitioner must prove that any erroneous or omitted advisements, if corrected, would have changed his or her decision to enter the plea. *State v. Lime*, 619 N.E.2d 601 (Ind.

---

**3.** We note that in order to reach this question, we assume for the sake of argument that Trujillo is correct that the failure to advise a defendant of the possible adverse immigration consequences of a guilty plea constitutes deficient performance. We also assume for the sake of argument, but explicitly do not decide, that the case announcing this rule, i.e., *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), applies retroactively to the instant case. We need not address these matters because we resolve this issue on grounds of lack of a showing of prejudice.

Ct.App.1993), *trans. denied* (citing *Follo-well v. State*, 578 N.E.2d 646 (Ind.1991)).

Trujillo couches his claim in terms of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced thereby. *French v. State*, 778 N.E.2d 816 (Ind.2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Taylor v. State*, 840 N.E.2d 324 (Ind.2006) (the failure to satisfy either component will cause an ineffective assistance of counsel claim to fail). This is the so-called *Strickland* test. Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816. To establish the requisite prejudice, a petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State*, 765 N.E.2d 578, 585 (Ind.2002). The two elements of *Strickland* are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State*, 749 N.E.2d 1130 (Ind.2001).

■ With the foregoing in mind, we can quickly dispose of Trujillo's challenge concerning the 1999 conviction. Trujillo admitted at the post-conviction hearing that he would have pleaded guilty even if he had been advised at the time about the immigration implications of his conviction. Thus, the advisement would not have changed Trujillo's decision to plead guilty. Accordingly, he cannot establish that he was prejudiced by counsel's failure to advise him in the 1999 prosecution that his immigration status might be implicated. Having failed to establish prejudice, his ineffective assistance of counsel claim must fail. *See id.*

■ We turn now to the 2008 conviction. Trujillo contends that the failure to explain the full penal consequences in this case, i.e., the risk of deportation, caused him to accept a plea agreement that he would have rejected if he had been properly advised. Because Trujillo was convicted pursuant to a guilty plea, we must analyze this particular claim under *Segura v. State*, 749 N.E.2d 496 (Ind.2001). *Segura* categorizes two main types of ineffective assistance of counsel cases, the second of which applies here. *Smith v. State*, 770 N.E.2d 290 (Ind.2002). This category relates to "an improper advisement of penal consequences," and is divided into two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure" and (2) "claims of incorrect advice as to the law." *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind.Ct.App.2003), *trans. denied.* Therefore, Trujillo's challenge qualifies under subsection (2) of the second category, i.e., an improper advisement of penal consequences relating to incorrect advice as to the law.

■ In *Segura*, our Supreme Court held that in order to state a claim for post-conviction relief under this subcategory, a petitioner may not simply allege that a plea would not have been entered, nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. Instead, the petitioner must "establish, by objective facts, circumstances that support the conclusion that [trial] counsel's errors in advice as to penal consequences were material to the decision to plead." *Segura v. State*, 749 N.E.2d at 507. In so doing, the petitioner "must establish an objective

reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id.* Under this analysis, we focus upon whether the petitioner proffered specific facts indicating that a reasonable defendant would have rejected the petitioner's plea had the petitioner's trial counsel performed adequately. *See Willoughby v. State*, 792 N.E.2d 560. Finally, we note that our Supreme Court determined in *Segura* that the failure to advise a client of the possibility of deportation in the event of a conviction may, under certain circumstances, constitute ineffective assistance of counsel.[4]

Citing *Sial v. State*, 862 N.E.2d 702 (Ind.Ct.App.2007), Trujillo contends that the requisite "special circumstance" in his case is the fact that most of his family lives in the United States, and for that reason his deportation would be especially difficult for him and them. In *Sial*, a resident non-citizen of the United States pleaded guilty to theft as a class D felony. Sial's attorney did not advise him of the possibility of deportation as a result of the conviction. He filed a PCR petition seeking to set aside the conviction on the basis that his counsel rendered ineffective assistance in failing to advise him of the possibility of deportation if he was convicted of a felony. The PCR court denied his petition and Sial appealed. This court reversed, applying the *Segura* requirement that a successful petitioner must, in order to "state a claim of prejudice from counsel's omission or misdescription of penal consequences that attaches to both a plea and a conviction at trial, ... allege ... " 'special circumstance,' or ..." 'objective facts' "supporting the conclusion that the decision to plead was driven by the erroneous advice." *Segura v. State*, 749 N.E.2d at 507 (footnotes containing internal citations omitted). The "special circumstances" that moved the court to grant Sial's PCR petition was the fact that he had a wife and daughter living in the United States.[5] The court explained it thus:

> Here, Sial testified that he has a wife and a thirteen-year-old daughter. Inasmuch as Sial has been in the United States for over twenty years, we infer that his daughter was likely born here and, consequently, would be an American citizen. If deported, Sial would be forced either to leave his wife and child behind or to uproot them from this country—most likely the only home his daughter has ever known. We believe that these are sufficient special circumstances and specific facts to establish a reasonable probability that if Sial's attorney had advised him that deportation is a possible consequence of a felony conviction, Sial would have chosen to proceed to trial rather than to plead guilty.

*Sial v. State*, 862 N.E.2d at 706 (internal citation omitted).

---

4. Our Supreme Court explained:
 [T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance. Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.
 *Segura v. State*, 749 N.E.2d at 500.

5. We note also that the *Sial* opinion might be interpreted to include as a special circumstance that "he has lived in the country for over twenty years[.]" *Sial v. State*, 862 N.E.2d at 707.

Trujillo contends that his special circumstances are the same as those that prompted this court to reverse the denial of Sial's PCR petition, i.e., "Next, Trujillo does in fact have similar special facts and circumstances, as in *Sial*, not the least of which is long-standing presence in the United States and his roots to this country through his family." *Appellant's Brief* at 12. As recounted above, the evidence in *Sial* demonstrated that Sial had a wife and thirteen-year-old child living in the United States.

Beginning with the latter claim, on the facts of this case and as expanded upon below, we do not find the length of time that Trujillo has lived in the Unites States to be a special circumstance within the meaning of *Segura*. As to the former claim, we cannot accept Trujillo's argument that the presence of his family in this country is the equivalent of the special circumstance deemed dispositive in *Sial*. We know that the *Sial* petitioner had a wife and minor child in the United States. In the context of this issue, a spouse and minor child surely are the most compelling of family members to consider, in that possible deportation raises the possibility of rending apart members of a nuclear family. Trujillo, however, provides scant information about what members of his family live in South Bend. The only information we can find was provided during a post-conviction, telephonic hearing conducted after Trujillo had been deported to Mexico, viz.:

Q Mr. Trujillo, you had indicated that you are now in Mexico, is that right?

A That's correct, yes, sir.

Q And where does the majority of your family live?

A The majority of my family most everybody there except me here. I am the only one here in Mexico now.

All them live up there now, are up there now.

Q Up where?

A South Bend, Indiana.

Q When you were in South Bend, Indiana, where do you reside? With whom?

A With my family, with my mother.

*Appellant's Appendix* at 34.

At the time of the post-conviction hearing, Trujillo was approximately 52 years of age. As of that time, he lived with his mother and did not mention a spouse or children, much less minor children, and thus failed to establish that he had a spouse or children. The prospect of forcibly separating from one's nuclear family that includes minor children is the sort of compelling circumstance that might indeed motivate one to forego whatever advantages may attach to pleading guilty, and instead to face whatever hazards attend a trial on the merits. The prospect of a middle-aged man separating from his mother and relatives other than a spouse or children are not nearly so compelling. Therefore, Trujillo's family situation is fundamentally different from the petitioner's in *Sial* and is not a "special circumstance" within the meaning of *Segura*.

In summary, Trujillo failed to demonstrate the presence of special circumstances within the meaning of *Segura* and therefore failed to demonstrate that he suffered prejudice as a result of the failure of 1999 counsel and 2008 counsel to advise him regarding the adverse immigration consequences of pleading guilty.

2.

 Trujillo contends his guilty pleas be should be set aside because they were not entered knowingly as a result of the failure to advise him of the adverse immigration consequences of pleading guilty. With respect to this issue, Trujillo con-

tends Ind.Code Ann. § 35–35–1–2(a)(1) (West, Westlaw through end of 2011 1st Regular Sess.) is dispositive. This provision states: "The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant ... understands the nature of the charge against him[.]"

We first observe that the alleged error of which Trujillo complains, i.e., the failure to advise Trujillo of possible negative immigration consequences of a guilty plea, does not implicate "the nature of the charges against him." *Id.* He does not deny that in each instance he understood he was being charged with conspiracy to commit dealing in marijuana. Be that as it may, we understand the essence of Trujillo's argument on this point to be that, pursuant to I.C. § 35–35–1–2, the trial court had a duty to inquire of Trujillo whether he understood that a guilty plea might carry with it negative immigration consequences. In support of this contention, Trujillo cites *Williams v. State*, 641 N.E.2d 44 (Ind.Ct.App.1994), *trans. denied.* In fact, *Williams* dictates the opposite conclusion.

In *Williams,* as here, the petitioners argued that their guilty pleas should be set aside because the court did not advise them in the plea proceeding of the possibility of deportation. The court rejected that argument, explaining as follows:

> The petitioners concede that the court advised them of the rights enumerated in this statute, but argue that due process requires the court to inform noncitizens of the deportation consequences of a guilty plea. We disagree.
> Our federal courts have largely considered deportation to be a "collateral" consequence of a guilty plea. Collateral consequences attending a guilty plea in some circumstances may be far less onerous than deportation. ... In Indiana,

however, the term "collateral consequences" has been applied in the guilty plea context to certain "subsequent negative consequences of an earlier conviction," *Pike v. State* (1990), Ind.App., 557 N.E.2d 1, 3, *vacated on other grounds,* 569 N.E.2d 650.

> "[W]e have often held that one who pleads guilty need not be advised [by the court] that the conviction might have adverse but future collateral consequences. Such holdings are unquestionably premised upon the rationale that the immediate conviction is the lone concern and future or contemplated but uncertain consequences need not be considered or made subject of discussion or advisement. Such considerations are irrelevant to the validity, *vel non* of the particular conviction in dispute."

*Id.,* 557 N.E.2d at 3. ...

> The responsibilities of a trial court in accepting a guilty plea are set forth with great specificity in our statutes and case law. We may not impose upon the courts the additional duty of inquiring into the citizenship and immigration status of criminal defendants.

*Williams v. State,* 641 N.E.2d at 46–47 (some internal citations omitted).

We agree with this aspect of *Williams.* Therefore, pursuant to the same rationale, we hold that the trial courts in the 1999 and 2008 cases did not violate I.C. § 35–35–1–2 in accepting Trujillo's guilty pleas.

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.