Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



APPELLANT PRO SE:

**JAMES HAMILTON**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES W. HAMILTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1403-PC-128 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT 1
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1301-PC-1

**December 16, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James Hamilton ("Hamilton") appeals pro se the Hendricks Superior Court's denial of his petition for post-conviction relief. Hamilton raises three issues, which we reorder and restate as:

I. Whether the post-conviction court erred when it concluded that Hamilton was not prejudiced by his trial counsel's incorrect advice as to the penal consequences of his guilty plea;

II. Whether the post-conviction court erred when it denied Hamilton's habeas corpus claim; and,

III. Whether the post-conviction court's findings of fact and conclusions of law are inadequate because the court failed to address all issues raised in Hamilton's petition for post-conviction relief;

Concluding that Hamilton failed to prove that he was prejudiced by trial counsel's deficient performance or present any other reversible error, we affirm.

**Facts and Procedural History**

In 2011, Hamilton pleaded guilty to Class B felony dealing in cocaine, as a lesser included offense of Class A felony dealing in cocaine. Pursuant to the plea agreement, five additional counts were dismissed, including a second charge of Class A felony dealing in cocaine. At the guilty plea hearing, the trial court questioned Hamilton about his ability to comply with the extended term of probation provided for in the plea agreement after noting that Hamilton had four prior felony convictions and had never successfully completed probation.

The following exchange occurred between the court and Hamilton:

COURT: . . . [A]nybody else that comes into this courtroom, the State is asking for twenty-five (25) or thirty (30) years. I understand this is a twenty (20) year plea, but, you are getting a gift.
HAMILTON: Yes, I am.

2

COURT: Why should I approve it?

HAMILTON: Um, like I said, I just, I believe can [sic] get through this program and work with . . .

COURT: I don't. That is the only reason I'm going to take this plea agreement. I don't believe in one iota that you are going to be able to complete six (6) years at the Work Release Facility without screwing it up. Because, I'm looking at your pre-sentence report and that is all I see are messes up every time. You can't follow rules. There is [sic] going to be more rules on you at the Work Release Facility and then if you make it through that, fourteen (14) years of probation.

HAMILTON: I understand.

COURT: Ever time I look through here you violated every, single time as I recall that you've been on some type of supervised release. Correct me if I'm wrong, in my mind you should just be given a twenty (20) year hit at the Department of Corrections. I don't like putting drug dealers in the Work Release Facility to begin with. This is a zero (0) tolerance plea, you are doing every day of your back-up time. . . . If you have a notion that you are going to bring any illegal substance into that facility and start doing anything stupid there, you might as well get rid of that now and let's just get it over with and send you to prison today, because it ain't going to happen.

Trial Tr. pp. 67-69.

The trial court reluctantly accepted Hamilton's plea and Hamilton was ordered to serve 7300 days (twenty years) in the Indiana Department of Correction. 2162 days, or the equivalent of six years minus 28 days credit for time served, were ordered to be served on work release. The remaining 5110 days (fourteen years) were suspended, but Hamilton was ordered to serve 4010 days (eleven years) on probation. On the date he was sentenced, Hamilton signed his "probation order" which explicitly stated that Hamilton was prohibited from consuming controlled substances or illegal drugs and from violating any state or federal law.

Hamilton began serving his executed sentence on work release on May 17, 2011. On June 6, 2011, Hamilton was asked to submit a urine screen. Hamilton attempted to

3

bribe a correctional officer "to make the drug screen go away" by giving the officer $20. Trial Tr. p. 74. The urine screen tested positive for cocaine. On October 4, 2011, the trial court revoked Hamilton's placement in work release and revoked his probation in its entirety. Hamilton was ordered to serve his twenty-year sentence in the Department of Correction, with credit for time served.

Hamilton appealed his probation revocation. In pertinent part, he argued that according to the terms of his plea agreement, his period of probation was to follow work release; therefore, "the trial court abused its discretion when it revoked his probation at a time when, according to the terms of the plea agreement, his probation had not yet started." Hamilton v. State, 970 N.E.2d 796, No. 32A05-1110-CR-599 at *2 (Ind. Ct. App. July 16, 2012).

> Concerning Hamilton's argument, our court observed:
>
> Hamilton does not question the general rule that a "defendant's probationary period begins immediately after sentencing" even if his actual probation begins at a later time. Instead, he argues that when, as here, the terms of the plea agreement say otherwise, the trial court is bound by those terms. Hamilton contends: "In contrast to all of the cases cited by the State, Hamilton's argument is based on Ind[iana] Code [section] 35-35-3-3(e): once the court accepts a plea agreement, it is strictly bound by its terms and may impose only the sentence required by the plea agreement."

Id. (internal and record citation omitted). Citing Kopkey v. State, 743 N.E.2d 331 (Ind. Ct. App. 2001), trans. denied and Gardner v. State, 678 N.E.2d 398 (Ind. Ct. App. 1997), our court rejected Hamilton's argument because "[a] defendant's 'probationary period' begins immediately after sentencing, even if defendant's plea agreement provides that the actual probation follows an executed sentence." Id. at 3. Our court also rejected

4

Hamilton's claim concerning the start of his probationary period because of the trial court's statements to Hamilton at the guilty plea hearing, which are quoted above. Id. at 3-4. Accordingly, our court concluded that the "trial court did not abuse its discretion in revoking Hamilton's probation for a violation that occurred within his term of work release." Id. at 4.

On January 7, 2013, Hamilton filed a pro se petition for post-conviction relief. Hamilton alleged he was entitled to post-conviction relief because 1) his plea agreement was ambiguous, 2) his trial counsel was ineffective, and 3) his guilty plea was not knowing and voluntary. Appellant's App. pp. 12-13. Hamilton's petition was amended in November 2013 to add claims of prosecutorial misconduct and ineffective appellate counsel.

Counsel entered an appearance for Hamilton in December 2013. In responsive pleadings filed prior to the hearing on Hamilton's petition, Hamilton argued that he was illegally confined because his plea agreement was void.

On January 28, 2014, a hearing was held on Hamilton's petition. Hamilton argued that his trial counsel was ineffective because counsel advised him that a violation of the terms of his work release would only result in the revocation of his work release placement, and not the revocation of his probation. Also, the plea agreement provided that Hamilton's probationary period would begin after he had served the executed portion of his sentence. Hamilton argued that he would not have accepted the plea agreement if he had understood that his probation could be revoked based on a violation of his work

5

release placement. Hamilton's trial counsel acknowledged that he incorrectly advised Hamilton of the law.

On February 21, 2014, the post-conviction court issued findings of fact and conclusions of law. The court denied Hamilton's request for post-conviction relief after concluding:

> Hamilton has failed to meet his burden to show that his trial counsel's failure to properly advise him that his probation could be revoked while serving his work release sentence caused him prejudice. There is evidence that Mr. Hamilton never intended to go to trial. Mr. Hamilton's contrary testimony at this PCR hearing is simply self-serving and not credible. During his PCR testimony, Mr. Hamilton completely denied a factual basis existed; however, the evidence indicates that he readily acknowledged the facts along with his guilt at the guilty plea hearing. In this case Scott Knierim testified that he was retained to negotiate a plea with the State to avoid prison time for the Petitioner. He was successful in doing the same and ultimately successful in getting the Court to accept and approve [] the same, despite the Court's previously stated reservations with the plea terms. Further, Mr. Knierim testified that there was never discussion of pursuing a jury trial. The evidence against Petitioner was overwhelming. The State had in its possession video evidence of a controlled buy between Mr. Hamilton and a confidential informant on more than one occasion. Mr. Hamilton received substantial benefits as a result of Mr. Knierim's efforts in negotiating the plea agreement. But for his own use of cocaine while in work release as well as his ill-fated attempt to bribe the work release officer regarding the dirty urine screen, Mr. Hamilton might very well still be enjoying the substantial benefits he received from the agreement. While his trial counsel forthrightly acknowledged error in advising him of a possible probation violation while in work release, it was not counsel's error that harmed Mr. Hamilton.

Appellant's App. p. 261. Hamilton now appeals.

## I. Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State,

6

761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd on reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## II. Ineffective Assistance of Trial Counsel

Hamilton contends that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel. "To establish a post-conviction claim

7

alleging violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Garrett v. State, 992 N.E.2d 710, 718 (Ind. 2013).

> First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as counsel guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial whose result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome.

Id. at 718-19 (citations omitted).

We initially observe that "[t]here are two different types of ineffective assistance of counsel claims that can be made in regards to guilty pleas: (1) failure to advise the defendant on an issue that impairs or overlooks a defense and (2) an incorrect advisement of penal consequences." McCullough v. State, 987 N.E.2d 1173, 1176 (Ind. Ct. App. 2013) (citing Segura v. State, 749 N.E.2d 496, 500 (Ind. 2001)); see also Smith v. State, 770 N.E.2d 290, 295 (Ind. 2002). Hamilton alleged and proved that he received incorrect advice as to the law. See Trujillo v. State, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011) (distinguishing between claims of "intimidation by exaggerated penalty or enticement by an understated maximum exposure" and "incorrect advice as to the law").

However, Hamilton must also establish prejudice, i.e. prove "by objective facts, circumstances that support the conclusion that [trial] counsel's errors in advice as to penal consequences were material to the decision to plead." See Segura, 749 N.E.2d at

8

507. Therefore, Hamilton had to establish an objective reasonable probability that competent representation would have caused him not to enter a plea. See id. We focus on whether Hamilton proffered specific facts indicating that a reasonable defendant would have rejected the plea had Hamilton's trial counsel performed adequately. See Trujillo, 962 N.E.2d at 115.

Hamilton's trial counsel admitted that he incorrectly advised Hamilton that a violation of his work release placement would not result in a revocation of his probation. However, Hamilton failed to present specific evidence, except for his own self-serving testimony, that he would have rejected the plea offer if he had been correctly advised of the law.

Hamilton's goal in plea negotiations was to avoid jail time. He informed trial counsel that he desired to complete his sentence in work release because he had four children to support. Counsel accomplished that goal by negotiating a plea that resulted in substantial benefit to Hamilton. Hamilton was charged with two counts of Class A felony dealing in cocaine (in addition to three lesser charges), and counsel negotiated an agreement whereby Hamilton pleaded guilty to one Class B felony, a lesser included offense of Class A felony dealing in cocaine, and would serve his executed time in work release. The remaining four charges were dismissed.

Importantly, it is unlikely that Hamilton would have prevailed at trial because the evidence against him was overwhelming. Hamilton participated in controlled buys, which were videotaped.

9

Although the trial court accepted Hamilton's plea, the court expressed a great deal of reservation and warned Hamilton that

> This is a zero (0) tolerance plea, you are doing every day of your back-up time. . . . If you have a notion that you are going to bring any illegal substance into that facility and start doing anything stupid there, you might as well get rid of that now and let's just get it over with and send you to prison today, because it ain't going to happen.

Trial Tr. pp. 68-69. In spite of that warning, approximately three weeks after he began serving his executed time in work release, Hamilton used cocaine and attempted to bribe a corrections officer. Hamilton's own criminal conduct, and not the incorrect advice of trial counsel, resulted in Hamilton serving executed time in the Department of Correction.

For all of these reasons, we conclude that Hamilton has not established that he was prejudiced by trial counsel's deficient performance, and therefore, he failed to prove that his trial counsel was ineffective. See e.g. Willoughby v. State, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (stating that if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice).

### III. Habeas Corpus

Hamilton contends that the trial court abused its discretion when it found that Hamilton's habeas corpus claim "is not at issue in this case." Appellant's Br. at 11; Appellant's App. p. 262. Hamilton claims he is entitled to habeas corpus relief because he is unlawfully confined under the "illegal plea bargain." Appellant's Br. at 18.

"The purpose of a writ of habeas corpus is to determine the lawfulness of custody or detention of the defendant and may not be used to determine collateral matters not

10

affecting the custody process." Hardley v. State, 893 N.E.2d 740, 742 (Ind. Ct. App. 2008) (citation omitted). A defendant is entitled to a writ of habeas corpus if he or she is unlawfully incarcerated and is entitled to immediate release. Id. (citation omitted). Proper claims under a petition for a writ of habeas corpus include allegations that the petitioner's sentence has expired, that he has been denied good time or credit time, or that he is seeking a correction of the beginning or end of his sentence. See Partlow v. Superintendent, 756 N.E.2d 978, 980 (Ind. 2001).

In this case, Hamilton alleged that he would not have entered into the plea agreement if he had been correctly advised that his probation could be revoked if he violated the terms of his work release. Hamilton concedes that if he prevails on his challenge to the plea agreement, the appropriate remedy is a new trial. Hamilton is attacking his conviction, and therefore, a writ of habeas corpus is not proper.[1] See Partlow, 756 N.E.2d at 980 (stating that when a prisoner attacks the validity of his conviction or sentence, a petition for post-conviction relief is the appropriate path to a judicial remedy; however, when one asserts he shall immediately be released from custody, a petition for writ of habeas corpus is proper).

## IV. Findings and Conclusions

Hamilton also argues that the trial court did not "make specific findings of fact and conclusions of law on all the issues Hamilton presented in his petition for relief as

---

[1] Hamilton also failed to properly plead his habeas corpus claim. Hamilton's counsel was allowed to file a responsive pleading seven days prior to the hearing on his petition for post-conviction relief. Hamilton claims that the pleading should be treated as an amendment to his petition for post-conviction relief. However, Hamilton did not seek leave of the court to amend his petition as required by Post-Conviction Rule 1(4)(c).

11

required by" Post-Conviction Rule 1(6). Appellant's Br. at 19. Rule 1(6) provides: "The court shall make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held."

The trial court's finding of facts specifically detail the events leading up to Hamilton's decision to plead guilty, his sentence, and the revocation of his probation. The trial court also addressed trial counsel's testimony at the hearing and counsel's admission that he gave incorrect advice to Hamilton during the plea agreement negotiations.

The trial court did not specifically address Hamilton's claims that his plea was not knowing and voluntary and of prosecutorial misconduct.[2] However, these claims center on trial counsel's incorrect legal advice, i.e. that a violation of Hamilton's work release placement would not result in a revocation of his probation. The trial court's findings and conclusions resolved the issue of trial counsel's incorrect advice and whether the error in advice was material to Hamilton's decision to plead guilty. Accordingly, the post-conviction court's failure to issue specific findings on Hamilton's claims that his plea was not knowing and voluntary and of prosecutorial misconduct is not reversible error. See Jackson v. State, 676 N.E.2d 745, 750 (Ind. Ct. App. 1997), trans. denied.

**Conclusion**

Hamilton failed to prove that trial counsel's incorrect advice was material to his decision to plead guilty; therefore, Hamilton did not prove that his trial counsel was

---

[2] In his pleadings and Appellant's Brief, Hamilton also appears to argue that the prosecutor engaged in misconduct during the probation revocation proceedings. This claim should have been raised in the direct appeal of his probation revocation, and may not be raised in his petition for post-conviction relief.

ineffective. We affirm the post-conviction court's denial Hamilton's petition for post-conviction relief.

Affirmed.

RILELY, J., and CRONE, J. concur.