## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 13 2018, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Douglas Crawford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 13, 2018

Court of Appeals Case No.
32A05-1710-PC-2486

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause No.
32D01-1501-PC-1

**Mathias, Judge.**

[1] Douglas Crawford ("Douglas") appeals the Hendricks Superior Court's denial of his petition for post-conviction relief. Douglas argues his trial counsel was

ineffective and alleges that 1) counsel failed to adequately advise Douglas regarding the benefits of the plea he rejected, and 2) counsel failed to present Douglas's preferred defense.

[2] We affirm.

## Facts and Procedural History

[3] On January 15, 2006, Caleb Stephenson ("Caleb") and his pregnant wife, Samantha Stephenson ("Samantha") invited Adam Squires ("Adam"), Ryan Vogel ("Ryan"), Waylon Cox ("Waylon"), William Cox ("William") and brothers James ("James") and Douglas Crawford (collectively, "the Crawfords") over to their apartment. The group was watching television when James pulled out a gun from "under the table in the case where it was." Ex. Vol. III, State's Ex. 1, p. 21. After James loaded the gun, he yelled "get your fu**ing a**es on the ground." *Id*. at 23. Ryan asked, "[A]re you serious?" and James responded, "[T]his isn't a joke, I'll blow your heads off, I'll do this." *Id*. Everyone got on the ground and "did everything [James] said." *Id*.

[4] The Crawfords proceeded to search everyone's pockets and demanded money. They stated they "were just going to start shooting people until they got [money]." *Id*. at 28. As Douglas moved toward Samantha, she told Douglas to take her wedding rings and to leave. Douglas removed the rings from Samantha's hand. Douglas also pulled a PlayStation 2 off of the wall, and James finished taking personal items from the other people in the apartment. Before they left the apartment, James opened the blinds, instructed everyone to

remain on the floor for twenty minutes, and threatened to kill them if they failed to follow his instructions. *Id*. at 29. Ryan started to get up and lock the door, but James came back inside the apartment and said, "[T]hat's a good way to get your fu**ing head blown off, you better stay on the ground." *Id*.

[5] After twenty minutes passed, Caleb called the police. Three officers arrived and questioned all of the victims. Within the next two weeks, each victim identified James and Douglas from a photographic line up.

[6] Douglas was charged with six counts of Class B felony robbery, plus charges of criminal recklessness and theft, nineteen counts total, for the offenses committed on January 15, 2006. A bench trial was held on August 31, 2007, and the court found Douglas guilty of the six robbery counts and six theft counts and not guilty of the remaining charges. A sentencing hearing was held on September 27, 2007, and Douglas was sentenced to serve consecutive terms of ten years for each Class B felony robbery conviction, for a total of sixty years. *See* Appellant's App. Vol. II, pp. 36–37. No direct appeal was ever filed.

[7] On October 10, 2014, Douglas filed his petition for post-conviction relief arguing that he was denied effective assistance of counsel. At the post-conviction hearing held on September 18, 2015, Douglas's trial counsel testified that he informed Douglas he was "looking at upwards of 120 years." PCR Tr. p. 7. Counsel explained that the State offered a plea agreement providing that Douglas would plead guilty to "Count 1- Armed Robbery with the penalty as a Class B felony" and the remaining counts would be dismissed. Appellant's App.

Vol. III, p. 104. Trial counsel testified that he "advised [the Crawfords] that they were offered 17 years executed [ . . . ] and that [he] believe[d] it was in their best interest to take the plea," but they rejected it. PCR Tr. p. 9.

[8] During the post-conviction hearing, the Crawfords testified that they wanted trial counsel to argue that the entire occurrence was a fake robbery. James testified that "Caleb told me that he had owed some previous money and that he wanted to know if I would be willing to come back down there and pretend that I'm robbing the place and take the drugs and the money out of there[,] that way he could tell his dealer that he had lost everything and we would split it." PCR Tr. p. 33. However, the alleged agreement was only between James and Caleb, not the other five victims or Douglas. Further, James testified that Douglas did not know about the robbery in advance because he would have talked James out of it. *Id*. at 42. In regard to the defense of a "pretend robbery," trial counsel advised the Crawfords that the defense would be unsuccessful because the evidence presented would have resulted in them being found guilty. *Id*. at 26.

[9] After the hearing, the post-conviction court made the following findings of facts and conclusions of law:

> 2. [Douglas] hired attorney John Moss ("attorney Moss") to represent [him]. Attorney Moss filed his Appearance[] and requested a bond reduction, which was denied after hearing.

3. After attorney Moss repeatedly failed to appear from hearings, [the Crawfords] hired attorney Joseph Thoms ("attorney Thoms") to represent them.

\*\*\*

6. Attorney Thoms requested but never received [Douglas]'s file or depositions from attorney Moss. In any event, he did not believe that the contents of Moss'[s] files or the depositions would have made a difference.

7. Attorney Thoms received discovery from then deputy prosecutor Joe Manning. Later, Adrienne Champine took over prosecution duties. Attorney Thoms reviewed the file and believes that he went through the file with his clients.

\*\*\*

9. Attorney Thoms advised the [Crawfords] that they were facing a "maximum 120 year" sentence. He negotiated a 17 year deal with the prosecutor and strongly recommended to the [Crawfords] that they accept the deal. They rejected a deal and opted for a bench trial.

10. On March 28, 2007, attorney Thoms appeared at the pretrial conference and requested that the matter be set for bench trial, which was held on August 31, 2007.

11. Preliminary to the trial, a record was made that [Douglas] waived the right to a jury trial, and that each had received and rejected the State's final plea offer. The waivers were in writing and were submitted to the Court. Additionally, [Douglas] orally confirmed [his] waivers on the record.

15. During the State's case, attorney Thoms:

> a. Made evidentiary objections to the questioning of the State's witnesses, at least one of which were sustained.
>
> b. Cross-examined each victim, pointing out some inconsistencies in the testimony.
>
> c. Drew attention to the prior relationship between some of the victims and one or both of the [Crawfords].
>
> d. Questioned whether the victims had been smoking marijuana before the armed robbery, suggesting that one of the victims was a marijuana dealer. [ . . . ]

16. After the State rested, attorney Thoms moved for dismissal stating: I don't believe they've proved the elements of a prima facie case, I believe that the statements of the victims are equivocal and contradictory and that they cannot prove beyond a reasonable doubt that they—that there was a gun present, the State has not produced the firearm and therefore, I do not believe they've met the elements of armed robbery at a minimum. The motion was denied.

17. After discussion with [Douglas], it was decided it would be in [his] best interest for [him] not to testify. [Douglas] did not want to testify. Defense rested without calling any witnesses.

\*\*\*

19. The parties then presented their closing arguments. After the State made their arguments, attorney Thoms raised a number of issues regarding the State's witnesses, alleging inconsistencies, equivocations, and contradictions. Regarding the deadly weapon element of armed robbery, he pointed out that the State did not produce a weapon: "There's no gun, they haven't been able to produce one, therefore, I don't believe the element of armed robbery has been proved."

Appellant's App. Vol. II, pp. 50–54. Further, the court concluded that:

37. In their PCRs, the [Crawfords'] first claim is that attorney Thoms was ineffective in that he was not prepared to try the case in that he failed to obtain attorney Moss'[s] files (including depositions), and spent insufficient time with the [Crawfords] such that their "pretend robbery" defense was not heard.

38. Regarding the depositions, attorney Thoms stated that he was unsuccessful in attempting to get attorney Moss to turn over his files or the depositions. Attorney Moss had a history of failing to appear in court. Attorney Thoms admitted that he did not attempt to obtain a copy from the Court's file. Nevertheless, Petitioners have failed to demonstrate how knowledge of the contents of the depositions would have resulted in an acquittal. The evidence is [sic] this case was very strong. All six armed robbery victims testified that the Crawford Brothers robbed them. Minor inconsistences in their testimony did not refute or lessen the overwhelming conclusion that the [Crawfords] robbed them at gunpoint. At the PCR hearing, both [Crawfords] admitted to committing the armed robbery.

39. The "pretend robbery" defense claimed by James had obvious limitations and drawbacks starting with the fact that the alleged agreement to fake a robbery would have only applied to one person and not to the other five people who were robbery

[sic] at gunpoint. Furthermore, at the PCR hearing, James admitted that it turned into a real robbery. [Douglas] never thought it to be anything else. [Douglas] had no real defense to [the] crimes. Nevertheless, attorney Thoms assisted them in exercise of their constitutional right to make the State prove its case beyond a reasonable doubt. This court will not second-guess matters of strategy by trial counsel.

***

41. Furthermore, they have failed to demonstrate how a different approach by attorney Thoms, or a different lawyer, would have caused a different result. They have failed to demonstrate prejudice.

42. [Douglas] also allege[s] that [he] would have accepted the State's plea offer had their attorney advised [him] that the armed robbery counts could be "stacked" (imposed consecutively). This complaint was not raised in their PCR and was, therefore, waived. PCR Rule 1, Section 8. In any event, attorney Thoms testified that he did advise the Crawford Brothers that because the six armed robbery counts could be stacked, the maximum sentence was 120 years, which is why he strongly recommended that they accept the State's offer.

Appellant's App. Vol. II, pp. 60–62.

[10]   Ultimately, the court found that Douglas's trial counsel performed within an objectively reasonable standard, and that trial counsel's performance was adequate during trial. Therefore, the post-conviction court concluded that Douglas had not established that he was denied effective assistance of counsel, and it denied his petition. Douglas now appeals.

# Discussion and Decision

[11] The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, we do not reweigh evidence nor judge the credibility of witnesses; therefore, to prevail, Douglas must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*.

[12] Where here, the post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id*. Accordingly, we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id*.

[13] A claim of ineffective assistance of trial counsel here requires a showing that: (1) Douglas's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Douglas such that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). And when it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011).

[14] Douglas argues his trial counsel's performance was deficient because he inadequately informed Douglas of the benefits of accepting the offered plea agreement. Specifically, Douglas argues that his trial counsel "did not adequately ensure that Douglas knowingly and intentionally rejected the plea agreement offered by the prosecution[,]" and counsel's failure prejudiced Douglas. Appellant's Br. at 14. Further, Douglas claims that his trial counsel was ineffective due to counsel's "decision to advise against Douglas'[s] defense was not just an isolated bad strategy or simply ill advised in hindsight[.]" *Id.*

## I. Ineffective Assistance of Counsel on Plea Agreement

[15] "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 1387 (2012). Douglas testified that counsel was unprepared and failed to properly advise him in considering whether to accept

the plea agreement. Douglas also alleges that counsel failed to explain that the sentence could be 120 years.[1]

[16] However, trial counsel testified that he urged Douglas to accept the plea agreement, but Douglas rejected it and opted for a bench trial. Trial counsel testified that he informed Douglas he was "looking at upwards of 120 years" PCR Tr. p. 7. Counsel stated that the Crawfords "believed that [] they had a good relationship with Judge Freese and that they would [] receive a fair trial with a bench trial." *Id*. at 20.

[17] The post-conviction court specifically found that counsel did advise Douglas that "because the six armed robbery counts could be stacked, the maximum sentence was 120 years, which is why [trial counsel] strongly recommended that [Douglas] accept that State's offer." Appellant's App. Vol. II, p. 62. Determining whether trial counsel provided ineffective assistance of counsel boils down to a credibility issue, and the post-conviction court found counsel's testimony to be credible.

[18] Further, before trial began the court noted that Douglas had rejected the plea agreement. The trial court also stated, "that if [he was] convicted, [the judge] will be the one that will sentence [him] and these are B felonies, so [he would be] looking at between 6 and 20 years worth of time." Ex. Vol. III, State's Ex.

---

[1] We note that Douglas did not raise his allegation that he would have accepted the State's plea offer in his PCR, and therefore, it was waived. PCR Rule 1, Section 8. Notwithstanding the waiver, we will address the issue.

1, pp. 10–11. Douglas understood the court's advisement. Here, Douglas claims that trial counsel should have corrected the trial court's statement of the potential sentence he was facing, because it was actually 120 years if the maximum sentence was imposed for each conviction. *See* Appellant's Br. at 14. However, this argument is unpersuasive because Douglas rejected the plea agreement before the trial court noted Douglas's understanding of his decision to reject it.

[19] Therefore, we conclude that trial counsel presented the plea agreement to Douglas, advised him that he faced a 120-year sentence if he proceeded to trial, and urged him to accept the plea agreement. Douglas voluntarily rejected the agreement against counsel's advice. Therefore, Douglas has not established that he was subjected to deficient performance of counsel, and we do not need to address the prejudice element. *See French*, 778 N.E.2d at 824 (stating that failure to satisfy either of the two elements will cause the claim of ineffective assistance of counsel to fail).

## II. Failure to Raise a Defense

[20] "Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review." *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011) (citing *Stevens v. State*, 770 N.E.2d 739, 746–47 (Ind. 2002)) (citations omitted). Trial counsel's "choice of defense theory" in the instant case was a matter of trial strategy. *See Overstreet v. State*, 877 N.E.2d 144, 154 (Ind. 2007). Counsel believed that the testimony of six victims would not be able to sustain the defense of a "pretend robbery." Trial

counsel testified that he believed "through vigorous cross examination we would be able to defend [the Crawfords] better." PCR Tr. p. 20.

[21] Further, Douglas admitted to the robbery during the post-conviction hearing, and the post-conviction court found that Douglas's preferred defense "had obvious limitations and drawbacks" because the "alleged agreement to fake a robbery" would have only applied to one of the six victims. Appellant's App. Vol. II, p. 61. Therefore, we conclude that given the weight of the evidence, trial counsel's decision to omit a defense that was unlikely to be successful fell within an objective standard of reasonableness. Thus, Douglas has failed to establish that trial counsel's performance was deficient, and we need not address the prejudice element of *Strickland*.

[22] For all of these reasons, the post-conviction court did not err in denying Crawford's petition for post-conviction relief.

[23] Affirmed.

Riley, J., and May, J., concur.