## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 20 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jose Angel Hernandez,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent.*

February 20, 2019

Court of Appeals Case No.
18A-PC-1357

Appeal from the
Tippecanoe Superior Court

The Honorable Laura W. Zeman, Judge

Trial Court Cause No.
79D04-1701-PC-5

**Altice, Judge.**

# Case Summary

Jose Angel Hernandez, a citizen of Mexico, entered the United States with his parents in 2002, when he was sixteen years old. In August 2014, he pled guilty to possession of cocaine and synthetic identity deception, both Class D felonies. Hernandez filed a petition for post-conviction relief, in which he argued that (1) his guilty plea counsel failed to properly advise him of the immigration consequences associated with his guilty plea, and (2) the trial court should have provided him with a Spanish-language interpreter at his hearings to "ensur[e] that he understood his *Boykin* rights prior to entering his plea of guilty." *Appellant's Appendix Vol. 2* at 16. Following the denial of his petition, Hernandez appeals and raises the following restated issues:

> I. Whether Hernandez received ineffective assistance of trial counsel; and

> II. Whether Hernandez established that, because he did not have an interpreter at trial court hearings, he did not knowingly and voluntarily waive his *Boykin* rights.

We affirm.

# Facts & Procedural History

Hernandez, born in October 1985, is a native of Mexico and remains a citizen of Mexico. He came to the United States in 2002 with his parents, and he has not returned to Mexico since he left. Hernandez did not have a green card or visa when he entered the United States, and he has not obtained one since his

arrival here.  He attended Jefferson High School in Lafayette until leaving sometime in the twelfth grade.  His classes were taught in English, but at a slower pace.

[4] Between 2004 and 2011, Hernandez had multiple encounters with the criminal justice system.  In June 2005, he was convicted of operating a motor vehicle without ever having received a license.  In July 2005, he was charged with Class B misdemeanor false informing, Class B misdemeanor public intoxication, and Class C misdemeanor minor consumption, and those charges were resolved by a diversion agreement.  In August 2010, Hernandez pled guilty to Class A misdemeanor operating while intoxicated and Class C misdemeanor failure to stop at the scene of an accident, and several other charges were dropped.  At the guilty plea hearing, after Hernandez acknowledged to the court that he had read, understood, and signed his Advisement of Rights form, and after the trial court informed him that if he was not a citizen of the United States "any disposition of your case could affect your ability to stay here in the United States," Hernandez responded, "I'm a citizen." *Exhibit Vol. 1* at 102.  In some of the proceedings, Hernandez's Advisement of Rights form was in Spanish and in others it was in English.  In some proceedings, Hernandez utilized an interpreter and in others he did not.  He sometimes provided law enforcement with a false name, Juan A. Rodriguez Merced, and sometimes provided an incorrect date of birth.

[5] In October 2012, Hernandez pled guilty (under the name of Juan A. Rodriguez Merced) under cause number 79D06-1112-FD-321 (Cause 321) to Class D

felony operating while intoxicated with a prior conviction. Hernandez was represented by attorney Brian Dekker, who could speak Spanish but conversed with Hernandez in English. During the October 2012 guilty plea hearing, Hernandez used a translator, but because the court noticed that his Advisement of Rights form was in English, the court asked Hernandez if he was bilingual and understood English and Spanish. Hernandez responded, "Yes." *Id*. at 121. During the hearing, the trial court advised, "If you're not an actual United States citizen a judgment of conviction in a criminal case can impact your legal status here in the states. Has Mr. Dekker covered with you, to your satisfaction, the impact that these judgments of convictions might have in the event that you are not a legal resident?" *Id.* at 128. That inquiry was translated into Spanish, and Hernandez responded, "I'm an American citizen." *Id.* The court accepted Hernandez's guilty plea and sentenced him on the Class D felony to a 730-day jail term with 180 days executed.

[6] On May 19, 2013, in the course of investigating a hit-and-run accident, police went to Hernandez's home looking for a man named Felipe, who was suspected to have been involved in the accident. During the investigation, police saw in plain view a rolled currency bill and a plastic baggie with white residue. The officers observed Hernandez shove these items in his pocket. Police also observed a white powdery substance on Hernandez's nostrils, and he admitted to having used cocaine. Hernandez was arrested, and, pursuant to a search warrant, police found cocaine, a digital scale, and more corner baggies with white residue.

[7] On May 30, 2013, Hernandez received an Immigration and Customs Enforcement detainer and a Notice to Appear before an immigration judge in Chicago. The Notice charged Hernandez with removability as a result of his illegal status in the United States.[1]

[8] Stemming from the police visit to his home on May 19, the State charged Hernandez on December 23, 2013, under cause number 79D04-1312-FD-000313 (Cause 313) with possession of cocaine as a Class D felony, possession of synthetic identifying information as a Class D felony, possession of paraphernalia as a Class A misdemeanor, and false informing as a Class A misdemeanor. The January 2014 initial hearing was conducted in English, and the Advisement of Rights form signed by Hernandez was in English. The Advisement form contained the provision advising that "[i]f you are not a U.S. citizen, a conviction could affect your immigration status." *Exhibits Vol. 1* at 11.

[9] On June 25, 2014, Hernandez appeared with counsel, attorney Timothy Broden, at the immigration court in Chicago for a hearing. At the beginning of the hearing, the immigration judge asked Hernandez, "And you speak and understand English?" and Hernandez replied, "Yes." *Exhibit Vol. 3* at 77. The court advised Hernandez that he was under removal proceedings and that he could be deported for entering the country without inspection, noting to

---

[1] More specifically, the Notice alleged that Hernandez was subject to removal from the United States pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, . . . in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Exhibits Vol. 4* at 106.

Hernandez that his circumstances did not indicate that he was eligible for DACA,[2] but the court continued the matter "to see the outcome of [Hernandez's] drug case." *Id*. at 81.

[10] On August 18, 2014, Hernandez entered into a plea agreement in Cause 313, pursuant to which he pled guilty to the two Class D felonies and the other two charges were dismissed. The plea agreement included the following provision:

> The Defendant acknowledges that if illegally present in the United States, or a resident alien, or present on a student visa, he/she is not eligible for community corrections or placement on probation. Defendant understands that he/she has a right to contact his/her consulate before pleading guilty, and that pleading guilty to a crime may affect his/her immigration status or result in deportation from the United States.

*Exhibit Vol. 1* at 9.

[11] Due to a technical issue, neither a recording nor a transcript of the guilty plea hearing in Cause 313 exists, although the parties appear to agree that an interpreter was not used. Under terms of the plea agreement, the length and placement of Hernandez's sentence was within the court's discretion. At the time that Hernandez pled guilty, he was living with and supporting his then-girlfriend, Christina, and her two children, and Christina was also pregnant with her first child with Hernandez.

---

[2] DACA refers to Deferred Action for Childhood Arrivals.

[12] On October 27, 2014, the trial court held a sentencing hearing in Cause 313. Hernandez did not request or use the services of an interpreter for the sentencing hearing. At the beginning of the hearing, as the trial court reviewed with Hernandez his age, address, and purpose of the hearing, the court asked him, "Do you read and write and understand the English language?" *Id.* at 84. Hernandez replied, "Yep." *Id.* The trial court sentenced Hernandez on the two Class D felonies to concurrent 730-day terms, with 550 days suspended to probation. The court committed Hernandez to community corrections for the remaining 180 days.

[13] On February 19, 2015, Hernandez appeared, with counsel Jacob Meah of the Law Office of Al Kola, before the immigration court in Chicago for a hearing. After asking Hernandez his name, the immigration judge asked him, "Do you speak English," and Hernandez replied "fluently." *Exhibits Vol. 3* at 85. The judge asked Hernandez about the status of the Indiana drug charge (Cause 313), and Hernandez explained that it was completed, having been sentenced in October 2014. The immigration judge reviewed with Hernandez the allegations in the Notice to Appear, which "charges that you are not a citizen of the United States and you're a native and citizen of Mexico; that you crossed the border on an unknown date without being inspected or admitted by an immigration officer." *Id*. at 88-89. Hernandez admitted that the allegations were true, and his counsel, on Hernandez's behalf, conceded removability. The immigration court explained to Hernandez that, as to his removability, "there is no waiver" due to his criminal offense, nor did the court believe that Hernandez was

eligible to file for permanent residency, such that Hernandez's options were either to request to leave the country voluntarily or be deported at government expense. *Id*. at 91. The immigration court continued the matter in order to allow Hernandez and his counsel to discuss the possibility of filing for asylum or withholding of removal.

[14] On May 28, 2015, Hernandez and his counsel, Al Kola, appeared for another hearing before the immigration court. The judge asked Hernandez if he spoke English, and he replied, "Yes." *Id*. at 96. The immigration judge discussed matters associated with Hernandez's application for asylum, including directing him where to file it, and it reset the matter for a subsequent hearing to allow Hernandez "to come back and testify in support of [his] application." *Id*. at 99-100. On November 3, 2015, the immigration court held another hearing, at the conclusion of which it ordered Hernandez's removal, finding that Hernandez did not qualify for any of the available exceptions. Hernandez began an appeal process of the decision.

[15] While Hernandez's immigration appeal was pending, he filed on January 31, 2017, a petition for postconviction relief, asking the post-conviction court to vacate and set aside his judgments of conviction and sentences in Cause 313. The petition raised two issues: (1) whether Hernandez received ineffective assistance of counsel because he did not receive accurate advice regarding the immigration consequences of his plea agreement; and (2) whether Hernandez should have had a Spanish-language interpreter present at his hearings before the trial court.

[16]     On January 25, 2018, the trial court held an evidentiary hearing on Hernandez's petition. During the hearing Hernandez used the services of the court's interpreter. Hernandez testified that, when he pled guilty in August 2014, he was living with and helping to support Christina and her two children.[3] At that time, he owned and operated a cell phone repair business and had been working in the cell phone repair industry since 2012. Hernandez testified that he and Christina had been together since around 2009 and that they married in 2017. Their first child together was born in May 2015, and they had twins in 2016. Hernandez stated that his parents have lived in Lafayette, Indiana, since they arrived in the United States in 2002, and that some of his siblings, aunts, and uncles also live in Lafayette. Hernandez testified that he had never been back to Mexico since leaving in 2002 and that he does not have any close family members still living in Mexico. Hernandez stated that his immigration appeal was still pending and, when asked if he had applied for an immigration defense called cancellation of removal or deportation, he said that he had not because he was not eligible because of the drug conviction (Cause 313). He testified that Dekker did not advise him that his guilty plea would come with immigration consequences, or that it would prohibit his use of a common defense to deportation. He also testified that he did not ask Broden (his immigration attorney) for legal advice on the effect that his convictions in Cause 313 would have on his removability. Hernandez testified that he would

---

[3] Christina was born in 1986 and came to the United States in 1997. She testified at the post-conviction hearing that, at that time, she had DACA status.

not have accepted the plea agreement in Cause 313 and would have preferred to go to trial had he known about the immigration consequences of pleading guilty. When asked whether he spoke English fluently when he entered into the plea agreement, he said "I would say no." *Transcript Vol. 2* at 25. He stated that he did not read the Advisement of Rights form or plea agreement before signing those documents.

[17] Dekker, Hernandez's guilty plea counsel, testified that he could speak Spanish but that he always conversed with Hernandez in English. He said that Hernandez never asked for an interpreter, but if he had, Dekker "absolutely" would have sought one, noting that his firm had had an "in-house" interpreter for fifteen years. *Transcript Vol. 2* at 14. Dekker testified that it was his practice to inform all of his clients that he was not an immigration attorney and that if they were not in the country legally or if they had a permit or visa, that they should consult with an immigration attorney. Dekker discussed that, during the course of his representation of Hernandez in Cause 313, he sent Hernandez five letters dated April 9, 2014, May 19, 2014, June 30, 2014, August 18, 2014, and October 6, 2014, all of which contained a bold advisement that read: "Note: If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." *Exhibit Vol. 4* at 110-14. Dekker was aware during the pendency of Cause 313 that Hernandez was involved in proceedings with the immigration court in Chicago and, in June 2014, Broden

sent a letter to Dekker advising him that he was representing Hernandez in the removal proceedings.

[18] Dekker testified that, during negotiations with the State in Cause No. 313, the State did not offer any agreement that would have had no immigration consequences. Dekker was satisfied with the ultimate result that Hernandez received, concurrent 730-day sentences with 550-days suspended, considering "the facts of the case and [his] priors" as well as a pending petition to revoke probation in Cause No. 321. *Transcript Vol. 2* at 14. A transcript of Hernandez's removal proceedings in Chicago was admitted during the post-conviction hearing.

[19] On May 14, 2018, the post-conviction court issued detailed findings and conclusions denying Hernandez's petition. With regard to Hernandez's claim that Dekker did not properly advise him of immigration consequences associated with his guilty plea, the post-conviction court concluded that "there is ample evidence that Mr. Dekker did directly and affirmatively advise [Hernandez] of the immigration consequences" and that, even if he did not, "[Hernandez] had actual knowledge of the immigration consequences before signing the plea agreement," given his prior plea agreements and advisements of rights. *Appellant's Appendix Vol. II* at 158. Further, the court determined,

> 12. "[I]n order to state a claim for postconviction relief a petitioner may not simply allege that a plea would not have been entered, nor is the petitioner's conclusory testimony to that effect sufficient to prove prejudice. Instead, the petitioner must "establish, by objective facts, circumstances that support a

conclusion that [trial] counsel's errors in advice as to penal consequences were material to the decision to plead guilty." *Segura v. State*, 749 N.E.2d [496, 507 (Ind. 2001)], *Trujillo v. State*, 962 N.E.2d 110 (Ind. App. 2011), *Gulzar v. State*, 971 N.E.2d 1256 (Ind. App. 2012).

"We see no reason to require revisiting a guilty plea if, at the end of the day, the inevitable result is conviction and the same sentence. 749 N.E.2d at 507. That is, the Court acknowledged that it is only in "extreme cases" that "a truly innocent defendant" pleads guilty "because of incorrect advice as to the consequences." *Gulzar*, 971 N.E.2d at 1262.

13. Even if Mr. Dekker had not advised the Petitioner of the immigration consequences, the court concludes the Petitioner has not stated any objective facts to support that his decision to plead guilty would have been changed if Mr. Dekker had advised him.

14. Under the category of objective facts, "it is also appropriate to consider "the strength of the State's case," which a reasonable defendant would take into a account when pondering a guilty plea, and "the benefit conferred upon the defendant." *Suarez v. State*, 967 N.E.2d 552 (Ind. App. 2012).

15. Here, the Petitioner did not testify to any "objective facts" to demonstrate that 'but for' Mr. Dekker not telling him about the immigration consequences, he would have proceeded to trial and that a different outcome (that is, a not guilty verdict) would have been likely given the facts of the case. Police went to the Petitioner's home looking for another person and found cocaine in plain view and physically on and in the Petitioner's person while in possession of official looking documents showing the use of a false identity.

> Mr. Dekker negotiated a guilty plea while the Petitioner was still on probation that included concurrent sentences for [two] new [] felony convictions and no sanction in his pending probation violation for a prior felony conviction. Mr. Dekker testified that earlier plea agreement offers were not accepted by the Petitioner because of immigration consequences. The "open" plea agreement would also have given discretion to the trial court to enter the felony convictions as misdemeanors which if entered as a misdemeanor could be beneficial to the Petitioner when arguing against his "removal" during immigration proceedings.

*Id.* at 159-60.

[20] With regard to Hernandez's post-conviction claim that he should have been provided with an interpreter during the Cause 313 trial court proceedings, the post-conviction court determined that Hernandez was advised of his *Boykin* rights in the Advisement of Rights form, where he acknowledged that he reads, writes, and understands English, and "[t]here is nothing in the record of the proceedings in [Cause] 313 or the proceedings in the current post-conviction relief that shows the Petitioner ever requested and was denied an interpreter for his guilty plea hearing in [Cause] 313." *Id.* at 161. The trial court also observed that (1) in some of his previous criminal court matters, Hernandez had used the services of an interpreter thereby demonstrating that he knew an interpreter would be available if he felt the need for one, and (2) he had participated in four immigration proceedings – one of which was before the guilty plea hearing in Cause 313 and the other three were within fifteen months of it – and at none of those hearings did Hernandez request an interpreter and, in fact, repeatedly told

the immigration court that he spoke English. The post-conviction court denied Hernandez's petition, and he now appeals.

# Discussion & Decision

## *I. Ineffective Assistance of Counsel*

[21]   "The standard of review for a petitioner denied post-conviction relief is rigorous." *Trujillo v. State*, 962 N.E.2d 110, 113 (Ind. Ct. App. 2011). Appellate courts consider only the evidence and reasonable inferences supporting the judgment. *Carrillo v. State*, 982 N.E.2d 461, 464 (Ind. Ct. App. 2013). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* We will disturb the post-conviction court's decision only if the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Gulzar v. State*, 971 N.E.2d 1258, 1260 (Ind. Ct. App. 2012), *trans. denied*.

[22]   Hernandez contends that the post-conviction court erred in finding that he was not denied the effective assistance of trial counsel. The petitioner for post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Gulzar*, 971 N.E.2d at 1260. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687, (1984)), *cert. denied*). Counsel's performance is deficient if it falls

below an objective standard of reasonableness based on prevailing professional norms. *French v. State,* 778 N.E.2d 816, 824 (Ind. 2002). Our standard of review requires us to presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Pennycuff v. State*, 745 N.E.2d 804, 811 (Ind. 2001). We judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct and not through the lens of hindsight. *Id*. at 811-12. Prejudice results where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either prong will cause the claim to fail." *French,* 778 N.E.2d at 824.

[23] Hernandez contends that Dekker provided ineffective assistance because he failed to properly advise Hernandez of the immigration consequences associated with his guilty plea. Because Hernandez was convicted pursuant to a guilty plea, we examine his claim under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *See Trujillo*, 962 N.E.2d at 114 (recognizing that defendant's post-conviction claim of ineffective assistance, based on counsel's failure to properly advise him of immigration consequences, must be analyzed under *Segura*).

*Segura* categorizes two main types of ineffective assistance of counsel cases.[4] The second category, at issue here, relates to "an improper advisement of penal consequences" and is further divided into two subcategories: (1) claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure, and (2) claims of incorrect advice as to the law. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*. Hernandez's challenge falls under the latter subcategory.

[24]   Specifically, Hernandez contends that Dekker performed deficiently because he failed to advise Hernandez that, pursuant to federal immigration laws, pleading guilty to possession of cocaine and synthetic identity deception would subject him to deportation and also render him ineligible for a defense known as cancellation of removal. The *Segura* court recognized that counsel's failure to advise regarding possible adverse immigration consequences could constitute deficient performance "under some circumstances." *Carrillo v. State*, 982 N.E.2d 468, 473 (Ind. Ct. App. 2013) (citing *Segura*, 749 N.E.2d at 500). Specifically, the *Segura* court stated:

> [T]he failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance. Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of

---

[4]  *Segura* categorizes ineffective assistance of counsel claims made in the context of a guilty plea into two categories: (1) the failure to advise the defendant on an issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. *Segura* v. State, 749 N.E.2d 496, 500 (Ind. 2001)

factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.

749 N.E.2d at 500.

[25] In this case, Hernandez contends that, although his trial counsel, Dekker, advised him that his plea may or could have deportation consequences, this advice was incorrect under *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which the Court explained:

> Immigration law can be complex, and it is a legal specialty of its own. . . . There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. *When the law is not succinct and straightforward, . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear.*

*Id*. at 369 (emphasis added).

[26] Hernandez argues that, in his case, the deportation consequences were clear under federal immigration laws. In particular, he claims that possession of cocaine and synthetic identity deception "obviously" fall within the plain language of 8 U.S.C. § 1182(a)(2)(A)(i), which renders inadmissible certain

noncitizens with convictions for crimes involving moral turpitude and convictions relating to controlled substances.[5] *Reply Brief* at 6. Hernandez argues that both of his convictions "rendered [him] inadmissible to and removable from the United States." *Id.* Furthermore, he asserts, the convictions "rendered him ineligible for cancelation of removal under 8 U.S.C. § 1229b(b)(1)." *Id.* Hernandez maintains that, under *Padilla*, only "when the law is not succinct and straightforward" is it sufficient for a criminal defense attorney to advise a noncitizen client "that pending criminal charges may carry a risk of adverse immigration consequences," but "when the consequences are clear, as they are in Mr. Hernandez's case, the duty to give correct advice is

---

[5] 8 U.S.C. § 1182(a)(2)(A)(i) provides:

> (i) Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of--

>> (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or

>> (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21),

> is inadmissible.

*See also*, 8 U.S.C. § 1227(a)(2)(A)(II) ("Any alien who . . . is convicted of a crime for which a sentence of one year or longer may be imposed[] is deportable.")

equally clear." *Appellant's Brief* at 14 (citing *Padilla*, 559 U.S. at 369). Hernandez notes that Padilla's offense was, like his own, an offense relating to a controlled substance, and the *Padilla* Court held, "This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute [and] his deportation was presumptively mandatory[.]"[6] 559 U.S. at 368-69. Therefore, Hernandez maintains, Dekker's advice was incorrect and amounted to deficient representation.

[27] The State responds that, contrary to Hernandez's characterization, the situation was not "clear" given that (1) Hernandez had previously told the court and Dekker that he was a citizen, (2) Dekker advised Hernandez in multiple letters that "[i]f you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States," and prior advisements and pleas had also advised that a conviction could affect his immigration status, and (3) Hernandez had retained an immigration attorney prior to the time he voluntarily chose to plead guilty. *Exhibit Vol. 4* at 110-14. Under these circumstances, the State urges, Dekker's performance was not deficient.

---

[6] In *Padilla v. Kentucky,* 559 U.S. 356 (2010), the defendant pled guilty to drug distribution, and in seeking post-conviction relief, he claimed his counsel not only failed to advise him of the deportation consequence but also told him that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 359. In finding that counsel provided deficient performance, the *Padilla* Court noted that "Padilla's crime, like virtually every drug offense except for only the most insignificant marijuana offenses, is a deportable offense under 8 U.S.C. § 1227(a)(2)B)(i)." *Id.* at 361 n.2.

[28] Even if we were to agree that Dekker was deficient by failing to specifically advise Hernandez that pleading guilty to possession of cocaine and synthetic identity deception would subject him to deportation and render him ineligible for cancellation of removal defense, Hernandez also would need to establish that Dekker's failure to so advise him resulted in prejudice. To state a claim for post-conviction relief under this subcategory, a petitioner must "establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead." *Segura*, 749 N.E.2d at 507. That is, simply alleging that the petitioner would not have pled will not be sufficient. *Id*. "Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." *Id*.; *see also Trujillo*, 962 N.E.2d at 114-15.

[29] Hernandez testified at the post-conviction hearing that he would not have pled guilty had Dekker properly advised him of the deportation consequences. However, as Hernandez acknowledges on appeal, pursuant to *Segura*, he must also show specific facts that establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea. The relevant circumstances to examine are those that existed when he pled guilty in 2014 and whether those circumstances establish an objectively reasonable probability that he would not have pled guilty.

[30] Whether a failure to advise a defendant of possible deportation consequences constitutes deficient performance by an attorney is "fact sensitive." *Segura*, 749

N.E.2d at 500. A number of decisions from this court have addressed whether the petitioner had shown the necessary "special circumstances." For instance, in *Sial v. State,* 862 N.E.2d 702, 706 (Ind. Ct. App. 2007), where the petitioner had been in the United States for twenty years and had a daughter who was born here, we held that the defendant did establish objective facts, or "special circumstances" to satisfy the prejudice prong of an ineffective assistance claim based on the failure to advise of the possible adverse immigration consequences from pleading guilty. However, in contrast, the court in *Trujillo,* concluded that the petitioner "failed to demonstrate the presence of special circumstances within the meaning of *Segura* and therefore failed to demonstrate that he suffered prejudice" from counsel's failure to advise him regarding the immigration consequences of pleading guilty. 962 N.E.2d at 116. In *Trujillo,* defendant came to the United States when he was fifteen and pled guilty when he was fifty-two, but the court did not find the length of time that he lived in the United States to be a special circumstance when considered with his family situation, which was that he did not have a spouse or children. The *Trujillo* court thus determined that his "situation was 'fundamentally different' from the petitioner's in *Sial.*" 962 N.E.2d at 116.

[31]     After *Sial* and *Trujillo,* this court in *Clarke v. State,* 974 N.E.2d 562, 566 (Ind. Ct. App. 2012), recognized additional factors that a reasonable defendant would consider in deciding whether to plead guilty are (1) the strength of the State's case against the defendant, and (2) the benefit to the defendant from pleading guilty. Clarke was thirty-three years old when he pled guilty to dealing in

cocaine and had been living in the United States for eleven years. At the time of his guilty plea, he had two children who were still in-utero, but he was not married to either of the women carrying his child. For purposes of the appeal, the *Clarke* court assumed, without deciding, that these were special circumstances, but then examined the strength of the case against him and the benefit he received by pleading guilty:

> The evidence against Clarke included the contraband, the large amount of cash found in the vehicle, and, we presume, the testimony of the two officers at the scene of the stop and arrest. Based upon the nature and strength of this evidence, we conclude that the objective probability of success at trial was low. Moreover, Clarke received a significant benefit in exchange for his guilty plea. The State agreed to reduce the dealing charge from a class A to a class B felony, and agreed to dismiss the marijuana charge and the resisting charge. The reduction in the dealing charge alone reduced his sentence exposure from an advisory sentence of thirty years to an advisory sentence of ten years. As it was, he was sentenced to six years, all suspended, and two years on probation. In summary, Clarke received a substantial benefit from his guilty plea.

*Id.* at 568. The *Clarke* court concluded that Clarke would have pled guilty even if he had been advised of the risk of deportation considering the strength of the case against him and the substantial benefit he received from pleading guilty.

[32] Similarly, in *Gulzar*, this court, after considering not only the circumstances of the defendant's life in the United States, but also the evidence establishing his guilt, determined that Gulzar had failed to demonstrate prejudice as a result of trial counsel's failure to advise him that his guilty plea to theft would result in

automatic deportation.  There, the defendant entered the United States in 2000 with his parents and siblings, and he pled guilty in 2006 to theft.  At some point, his parents and siblings became naturalized citizens.  Gulzar's participation in the crimes was documented on surveillance video, the items purchased with the stolen credit card were found in his apartment, and Gulzar never denied his involvement.  He was charged with three Class D felonies, but pled guilty to one and was sentenced to eighteen months, all suspended, and probation, which he completed.  The *Gulzar* court recognized that "[i]f deported, Gulzar would be forced either to leave his family behind or to uproot them from the country that has been their home for more than a decade," but concluded that, even if those facts "may indeed be special circumstances," Gulzar had not proven prejudice, given the strength of the case and benefit of the plea.  971 N.E.2d at 1262.  In reaching its decision, the *Gulzar* court noted that it is only in "extreme cases" that "a truly innocent defendant" pleads guilty "because of incorrect advice as to the consequences" and found that Gulzar's case "is not one of those extreme cases."  *Id.* (citing *Segura*, 749 N.E.2d at 507).

[33]  We likewise find that Hernandez's case is "not one of those extreme cases" where a truly innocent defendant pled guilty because of incorrect advice as to consequences.  Hernandez came to the United States from Mexico in 2002 when he was sixteen.  He was with Christina at the time he pled guilty in 2014, although not married to her yet, and she was pregnant with their first child.  He was also operating a cell phone repair business.  In addition, we must also consider the strength of the case against him and the benefit of his plea.  The

case against Hernandez was strong. Cocaine was found in his residence and on his person. A white powdery substance was also observed on his nostrils, and he admitted to using cocaine. He also possessed synthetic identifying information. He pled guilty to two Class D felonies, and the two misdemeanor counts were dismissed. The plea gave the trial court discretion to enter the felony convictions as misdemeanors. That agreement also resolved a petition to revoke probation that had been filed in Hernandez's prior felony operating while intoxicated offense. The trial court sentenced Hernandez to a 730-day term with 550 days suspended to probation and the remainder served on community corrections.

[34] Even if we assume that Hernandez established special circumstances related to his job and family, we conclude that, in light of the evidence establishing his guilt and the benefit he received, he has failed to demonstrate prejudice. Accordingly, we affirm the post-conviction court's determination that he did not receive ineffective assistance of counsel.

## II. Interpreter

[35] Hernandez claims that because he did not have an interpreter present at his hearings in Cause 313, "the record does not reflect that he knowingly and voluntarily" waived his *Boykin* rights.[7] *Appellant's Brief* at 20. The failure to

---

[7] In *Boykin v. Alabama*, the United States Supreme Court held that a trial court must be satisfied that an accused is aware of three rights before accepting a guilty plea: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. 395 U.S. 238, 242-243

advise a criminal defendant of his constitutional rights in accordance with *Boykin* prior to accepting a guilty plea will result in reversal of the conviction. *Ponce v. State*, 9 N.E.3d 1265, 1270 (Ind. 2014). *Boykin* does not require that the record of the guilty plea proceeding show that the accused was formally advised that entry of his guilty plea waives certain constitutional rights or that "the record contain a formal waiver of [*Boykin* rights] by the accused." *Winkleman v. State*, 22 N.E.3d 844, 851 (Ind. Ct. App. 2014), *trans. denied*. Rather, *Boykin* requires a conviction to be vacated only if the defendant "did not know or was not advised at the time of his plea that he was waiving his *Boykin* rights." *Id.* (citing *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind. 2001)).

[36] Our Supreme Court has directed that "a defendant who cannot speak or understand English has [the] right to have his proceedings simultaneously translated to allow for effective participation." *Ponce*, 9 N.E.3d at 1272. Hernandez argues that his native language is Spanish, he used the services of an interpreter in other cases, and although he did speak "some English," he did not speak English fluently enough "to understand legal matters." *Appellant's Brief* at 20. Therefore, he claims that he "should have had[] an interpreter present at his hearings, particularly at his guilty plea hearing," and that the record does not reflect that he knowingly and voluntarily waived his rights. *Id.* We disagree.

---

(1969); *see also* Ind. Code § 35-35-1-2 (requiring that a trial court not accept a guilty plea without first determining that the defendant has been informed he is waiving certain rights).

[37] In this case, there is no recording or transcript of the August 2014 guilty plea hearing. "[W]here the record of the guilty plea hearing itself does not establish that a defendant was properly advised of and waived his rights, evidence outside of that record may be used to establish a defendant's understanding." *Ponce*, 9 N.E.3d at 1273. We thus examine the surrounding hearings and circumstances.

[38] In some of Hernandez's criminal proceedings that preceded Cause 313, he used an interpreter and, in others, he did not. Hernandez's attorney in Cause 313, Dekker, testified at the post-conviction hearing that, although he could speak Spanish, he and Hernandez only conversed in English. Dekker stated that at no time in either Cause 313 or Cause 321 did Hernandez indicate that he would like to utilize the services of an interpreter. At the Cause 321 sentencing hearing, which occurred in October 2012, the trial court noticed that Hernandez was using a translator and Hernandez's Advisement of Rights form was in English. The court then asked Hernandez whether he was bilingual and could understand both English and Spanish, and Hernandez replied in the affirmative. At the beginning of the Cause 313 sentencing hearing, which occurred in October 2014, the trial court asked him, "Do you read and write and understand the English language?" *Exhibit Vol. 1* at 84. Hernandez replied, "Yep." *Id*. Hernandez's Advisement of Rights form was in English and he signed it and filed it with the trial court.

[39] At the same time as matters were proceeding in Cause 313, Hernandez was appearing, with counsel, for hearings in the Chicago immigration court. He

appeared on June 25, 2014, which was before his August 2014 guilty plea hearing in Cause 313, and then again in February, May, and November 2015, which followed his October 2014 sentencing hearing. At each, he conversed with the court only in English and repeatedly told the court that he could speak English, once responding by stating "fluently." *Exhibit Vol. 3* at 85.

[40] Given the record before us, we agree with the State that "[t]he record in no way reflects that [Hernandez] did not understand his *Boykin* rights." *Appellee's Brief* at 13. Accordingly, we find no error with the trial court's decision that Hernandez was not entitled to post-conviction relief on this basis.

[41] Judgment affirmed.


Brown, J. and Tavitas, J., concur.